ELI BROWN ET AL. V. AMANDA M. WILLIAMS.

[FILED MARCH 30, 1892.]

1. **Review:** REFEREE'S REPORT: PRESUMPTIONS.  Where a referee is appointed by the court to hear the evidence and report his findings of fact and conclusions of law, within a given time, and the time for filing his report is subsequently extended by the court, upon stipulation of the parties until the first day of the next

term of court, and the date when the next term convened not appearing from the record, it will be presumed that such report was made within the time designated by the court.

2. ———: ———: EVIDENCE NOT PRESERVED IN BILL OF EX-CEPTIONS.    Where judgment is entered upon the findings of a referee and in accordance with his conclusions of law, the evidence not having been preserved by a bill of exceptions, the only question for consideration in this court, upon a petition in error to have said judgment reviewed, is whether the court has correctly applied the law to the facts as found by the referee.

3. Assignment for Creditors: PRIOR PREFERENCE.    A debtor in failing circumstances and contemplating insolvency may pay or secure an indebtedness created within nine months prior thereto ; and a chattel mortgage executed to secure a *bona fide* debt created within said time, will not be held void for the reason that such debtor, within a few hours thereafter, makes a general assignment of all his property, including that mortgaged as aforesaid, for the benefit of his creditors.

4. Words and Phrases: "MONTH."    When the word "month" is used in a statute, and there is nothing to suggest a different meaning, it will be construed to mean a calendar month.

ERROR to the district court for Franklin county.    Tried below before GASLIN, J.

*J. L. Kaley (A. F. Moore* with him), for plaintiffs in error, cited, as to the bill of exceptions: *Scott v. Waldeck,* 11 Neb., 526; *Morehead v. Adams,* 18 Id., 571; *Gibson v. Gibson,* 24 Id., 409; *Seward v. Klenck,* 30 Id., 775.    As to the execution and filing of conveyances: *Hershiser v. Higman,* 31 Neb., 531; *Tripp v. Natl. Bank,* 48 N. W. Rep. [Minn.], 5; *Banks v. Barbed Wire Co.,* 20 Neb., 315; *Batten v. Smith,* 22 N. W. Rep. [Wis.], 807 ; *Kan. Mfg. Co. v. Gandy,* 11 Neb., 418.    Under the common law the term month meant a lunar month. (2 Blackstone, 141; 2 Coke, Lit., ch. 2, sec. 303; *Barksdale v. Morgan,* 4 Mod. Rep. [Eng.], 185 ; *Lacon v. Hooper,* 6 T. R. [Eng.], 224 ; *Redmond v. Glover,* 1 Dud. [Ga.], 107; *Rives v. Guthrie,* 1 Jones [N. Car.], 84; *Loring v. Halling,* 15 Johns. [N.Y.], 119; *Glenn v. Hebb,* 17 Md., 265; *State v. Jacobs,* 2 Harr.

[Del.], 548.) According to the spirit and intent of the law the transfer should operate as a general assignment for the benefit of all creditors. ( *White v. Cotzhausen*, 129 U. S., 339; *Preston v. Spaulding*, 120 Ill., 208; *Rochester v. Armour*, 8 S. Rep. [Ala.], 780; *Putney v. Freisleben*, 11 S. E. Rep. [S. Car.], 337; *Wilks v. Walker*, 22 S. Car., 108; *Miner's Natl. Bank Appeal*, 57 Pa. St., 193; *Winner v. Hoyt*, 66 Wis., 227; *Straw v. Jenks*, 43 N. W. Rep. [Dak.] 941; *Kellog v. Richardson*, 19 Fed. Rep. [Mo.], 70; *Kerbs v. Ewing*, 22 Id., 693; *Freund v. Yagerman*, 26 Id., 812; *Welch v. Sacket*, 12 Wis., 270; *Day v. Griffith*, 15 Ia., 104; *Hood v. Brown*, 2 O., 266; *Jackson v. Richards*, 6 Cow. [N. Y.], 617.

*Sheppard & Black, contra:*

As between the parties a pre-existing debt is a sufficient consideration to support a subsequent mortgage. ( *Ward v. Parlin*, 30 Neb., 376; *Jordan v. White*, 38 Mich., 253; *Cooley v. Hobart*, 8 Ia., 358.) A debtor may prefer his creditors. (*Davis v. Scott*, 22 Neb., 154; *Joiner v. Van Alstyne*, Id., 172; *Bonns v. Carter*, Id., 504; *Bierbower v. Polk*, 17 Id., 268; *Nelson v. Garey*, 15 Id., 531; *Grimes v. Farrington*, 19 Id., 48; *Lininger v. Raymond*, 12 Id., 19.) The findings of a referee, like the verdict of a jury, will not be set aside unless they are clearly wrong. (*State v. Bennett*, 19 Neb., 191; *Brown v. O'Brien*, 4 Id., 199; *Hartley v. Dorr*, 15 Id., 451; *Potvin v. Curran*, 13 Id., 302.) When months are mentioned in a statute, they are understood to be calendar months. (*Glore v. Hare*, 4 Neb., 132.)

Post, J.

This was an action in the district court of Franklin county by the defendant in error against the plaintiffs in error, defendants below, Eli Brown, sheriff, and the sureties on his official bond as sheriff for said county. The cause

of action alleged is the taking and selling by said sheriff, as assignee of one S. S. Elder, under a general assignment for the benefit of creditors, of a certain stock of general merchandise and store fixtures which plaintiff below claimed by virtue of a chattel mortgage executed by said Elder. The case by agreement was referred to Hon. C. J. Dilworth, by whom it was tried and who submitted the following report:

"Your referee finds from the pleadings and testimony offered, and the admission of the parties hereto, all of which are of record, the following facts:

"First—That the firm of A. M. Williams & Co., composed of A. M. Williams, the plaintiff in this case, and G. E. Williams, was and had for some years been doing business as merchants in the town of Riverton, Franklin county, Nebraska, and that on the second day of January, 1888, the estimated value of the stock on hand belonging to said company, amounted to thirteen thousand dollars, and the debts against said firm were estimated to be eight thousand dollars.

"Second—That on January 2, 1888, the said firm of A. M. Williams & Co. sold said stock and business to S. S. Elder, and took in exchange therefor the notes of that date executed by the said S. S. Elder and payable to the plaintiff in this case, A. M. Williams, as follows, to-wit: One note for $456.08, due in two years, with ten per cent interest; one note for $1,000, due in two years, with ten per cent; one note for $1,000, due in two years, with ten per cent. Said S. S. Elder also conveyed real estate to the plaintiff of the estimated value of $2,000 and assumed to pay the debts of the firm to the amount of $8,000.

"Third—That after said notes were taken, and during the absence of the plaintiff, said notes were left in the possession of her attorneys, Sheppard & Black, to attend to the interests concerning them; that on the 1st day of October, A. D. 1888, at the request of Mr. Black, one

of said attorneys, Mr. S. S. Elder made, executed, and delivered to the plaintiff the chattel mortgage marked 'Exhibit A' in this case, upon the goods in question; which said mortgage was filed for record on the 2d day of October, 1888, at 9 o'clock A. M.; that possession of the said goods so mortgaged was taken by the mortgagee immediately after said mortgage was executed.

"Fourth—That after the mortgage was executed, and before the same was recorded, the said S. S. Elder, on the 2d day of October, A. D. 1888, made an assignment of all his goods and chattels (including the goods in controversy) for the benefit of all his creditors. This assignment was drawn by the said Mr. Black, of the said firm of Sheppard & Black, and by him filed for record October 2, 1888, at 9 o'clock 30 minutes A. M.

"Fifth—That the aforesaid Brown was, at the time when these transactions occurred, the sheriff of said Franklin county, and the other defendants were his sureties, with the bond in the usual form.

"Sixth—That on the 8th day of October, 1888, the said sheriff, Eli Brown, took possession of said goods without the consent of the said plaintiff, under and by virtue of said assignment, and proceeded to invoice, advertise, and sell the same, and did sell to the amount and value of $3,400; that on the 12th day of October, A. D. 1888, the county judge of said county fixed upon October 25, A. D. 1888, as the time of presenting claims against said estate by creditors, under the assignment act, and that on that day the said plaintiff by her attorneys presented her said claim of $2,456.08 for allowance under the provisions of said assignment.

"Under the above state of facts the referee, as conclusions of law and fact, finds:

"First—That the said mortgage given on the 1st day of October, 1888, from the said S. S. Elder to the said plaintiff was made in good faith to secure a valid debt, and said

mortgage is and was a lien upon said property to the amount of the plaintiff's claim therein named.

"Second—That the said defendants in taking said property acted without authority of law, and in so doing became liable to the plaintiff to the amount of her interest in said property.

"Third—That there was due to the said plaintiff on the 8th day of October, A. D. 1888, from the said S. S. Elder, the sum of $2,456.08, together with interest thereon from January 2, 1888, at ten per cent per annum; making, in the aggregate, $2,619.86; and that the said plaintiff should have and recover of and from the said defendant the said sum of $2,619.86, together with seven per cent interest from the said 8th day of October, A. D. 1888.

"All of which is respectfully submitted.

"C. J. DILWORTH, *Referee.*"

On the coming in of said report exceptions were taken thereto on the ground that the referee had no jurisdiction to try said case at the time of the alleged trial, which was overruled. The report was confirmed and judgment entered in accordance with the recommendation of the referee. Subsequently a motion was made for a new trial for the reasons: First, the court erred in confirming said report; second, the referee had lost jurisdiction of the case at the time of the trial of the case before him and had no authority to hear the evidence or decide or report upon the same; third, the confirmation of said report is contrary to law; fourth, the judgment is contrary to law and is not supported by the evidence; which motion was overruled and exceptions taken.

The objection that the referee's findings are not supported by the evidence cannot be considered, the evidence not having been preserved in the form of a bill of exceptions. The questions remaining are two only: First, Had the referee jurisdiction? In other words, had he lost jurisdiction by failing to try and report in accordance with the

original order of reference.   The referee was appointed at
the June term, 1889, and required to fix a time for hearing,
not later than August 5, 1889, and report at the next term.
On the 23d day of January, 1890, the time for trial and
report was extended by a written stipulation filed by coun-
sel for the respective sides "until such time as the referee
may name, not later than the first day of April next." It
appears from the report of the referee that the evidence
was taken on the 23d day of January, 1890, and that the
case continued for argument until the 17th day of May,
1890, at which time the argument was heard and closed.
On the 24th day of June, 1890, the court made the follow-
ing order: "On consideration by the court the time for
the referee to file his report is extended to the next term
of court, on the first day thereof, by consent of parties."
It does not appear from the record when the next term
convened, and it will be presumed that the report was filed
in conformity with the foregoing order.   It was held in
*Deitrichs v. L. & N. W. R. Co.,* 13 Neb., 46, that the
failure of the referee to file his report within the time
named in the order of the court, is a mere irregularity and
is not a sufficient ground for setting it aside, even in the
absence of any agreement extending the time.   The first
objection is, therefore, without merit.

The next question presented, whether the referee's con-
clusions of law, and the judgment in accordance therewith,
are supported by the findings, involves the real contention
of the parties, viz., is the mortgage of plaintiff below void
under the provisions of the assignment law.   The provis-
ions of the assignment law, chapter 6, Compiled Statutes,
essential to a consideration of the question presented, are
found in sections 43 and 44, as follows:

"Sec. 43. [Preferring creditors.]—If a person, being
insolvent, or in contemplation of insolvency, within thirty
days before the making of the assignment, with a view to
give a preference to a creditor or person who has a claim

against him, procures any part of his property to be attached, sequestered, or seized on execution, or makes any payment, pledge, assignment, transfer or conveyance of any part of his property, either directly or indirectly, absolutely or conditionally, the person receiving such payment, pledge, assignment, transfer, or conveyance, or to be benefited thereby, having reasonable cause to believe such person is insolvent, or in contemplation of insolvency, and that such payment, pledge, assignment, or conveyance is made in fraud of the laws relating to insolvency, the same shall be void, and the assignee may recover the property, or the value of it, from the person so receiving it or so to be benefited.

" Sec. 44. [Clerks' and servants' wages.]—Nothing in this act contained shall be construed so as to prevent any debtors from paying or securing to be paid any debt not exceding the sum of one hundred dollars, for clerks' or servants' wages, or from paying or securing any debt which shall have been created within nine months prior to the date of such payment, or securing or to effect any mortgage or security made in good faith to secure any debt or liability created simultaneously with such mortgage or security, provided any such mortgage shall be filed for record in the proper office within thirty days from its date."

It will be observed that it is not every act of preference by an insolvent debtor or one contemplating insolvency which is declared to be void by the provisions of section 43. That section has reference only to those payments, conveyances, assignments, etc., where the party to be benefited thereby has reasonable cause to believe that such debtor is insolvent or contemplating insolvency, and that such payment, assignments, conveyance, etc., is made in fraud of the laws relating to insolvency. The finding of the referee upon the question of the good faith or fraudulent intent of the parties to the mortgage must be regarded as conclusive. That question was, we will presume, fairly

submitted to him and he has found against plaintiffs in error on that issue. We must accordingly assume that the mortgage was given by Elder to secure a *bona fide* indebtedness due from him without any fraudulent intention shared by or known to the defendant in error. It has been frequently held by this court that it was not the purpose of the assignment law to take away the dominion which at common law one is permitted to enjoy over his own property. A debtor in failing circumstances may still secure one or more of his creditors by mortgage or conveyance absolute, provided the transaction is not tainted with fraud, although the effect of such conveyance or mortgage is to defeat the collection of other claims. (*Hershiser v. Higman*, 31 Neb., 531; *Banks v. Omaha Barb Wire Co.*, 30 Id., 128.) In the last named case it was held that where an insolvent debtor within thirty days prior to a general assignment, with intent to give preference to one creditor, assign to him a mortgage and notes to secure a debt created more than nine months previous, such transaction was in fraud of the assignment law, the creditor having reasonable cause to believe such debtor was at the time thereof insolvent. By section 44 it is expressly provided that nothing in this act shall be construed so as to prevent any debtor from     *   *   *     paying or securing any debt which shall have been created within nine months prior to the date of such payment.

The report of the referee is silent upon the question of the knowledge of the plaintiff below of the insolvency of the mortgagor Elder at the time she accepted the mortgage. Nor is there any finding to the effect that Elder was in fact insolvent or contemplating insolvency at the time the mortgage was executed. There are no facts found by the referee from which we can infer that the plaintiff below was guilty of any fraudulent intention in accepting the security in question or had knowledge of any such fraudulent intention on the part of Elder, the mortgagor. As

already said, we regard the findings of the referee as conclusive on that question. It is distinctly charged in the answer that the mortgage was given and accepted with a common purpose of the parties thereto to defraud the creditors of Elder. The referee has evidently found for the plaintiff below upon that issue. The mortgage, having been executed and received in good faith as security for an indebtedness created within nine months prior thereto, must be held to be within the exception contained in section 44, and is therefore valid, notwithstanding it may have been made in contemplation of insolvency within the knowledge of the mortgagee.

It is urged by counsel for plaintiff in error that in computing time the statute contemplates lunar and not calendar months. If this contention can be sustained it is plain that the mortgage in controversy cannot be brought within the exception contained in section 44. When months are mentioned in a statute in prescribing the time within which an act shall be done it is understood to mean calendar and not lunar months. (Maxwell's Practice in Justice Courts [5th Ed.], 769; *Glore v. Hare*, 4 Neb., 132; 15 Am. & Eng. Encyc. of Law, 712, and note.) It is apparent that the debt in this case, according to the finding of the referee, was created within nine calendar months prior to the assignment. The judgment on the findings of the referee is right and should be

AFFIRMED.

THE other judges concur.